**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| WALMART INC., <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL WILLIAM P. BARR, U.S. DRUG ENFORCEMENT ADMINISTRATION, and ACTING ADMINISTRATOR TIMOTHY J. SHEA, <br><br> *Defendants.* | No. 4:20-cv-00817 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PARTIAL SUMMARY JUDGMENT BRIEFING**

Walmart is engaging in gamesmanship. Far from providing any compelling reason to expedite the merits of this litigation, Walmart's aggressive insistence that DOJ expeditiously "defend [its] reading of the statute and regulations" before resolution of its immunity defense, in addition to other jurisdictional defenses, confirms that this suit is a ploy to obtain advantage in an anticipated (but not yet pending) enforcement action, or a ruling to help it in the MDL—not a genuine attempt to secure from this Court legal clarity on Walmart's present behavior. *See* ECF No. 46, Opp. to Mot. for Stay ("Opp."), at 3. Walmart seeks to force DOJ to defend the merits of its alleged "reading" of the law in a suit with no jurisdictional basis. The Court should reject Walmart's entreaty for at least four reasons.

*First*, contrary to Walmart's suggestion, briefing the merits of a case through summary judgment while a motion to dismiss presenting a serious question of sovereign immunity remains pending is far from "the normal course" in this or other federal courts. Opp. at 1. On the contrary, "trial courts should give Rule 12(b)(1) motions precedence." *Dynamic Image Techs., Inc.*, 221 F.3d 34, 37 (1st Cir. 2000).  After all, "sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself. Regardless of what the plaintiff seeks … the risk of harm from having to defend the lawsuit remains constant." *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992). Indeed, "[o]ne of the purposes of immunity … is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending" a federal lawsuit. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (discussing absolute or qualified immunity for federal officials).[1] "[I]mmunity is intended to shield the defendant from the burdens of defending the suit." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). Walmart's insistence that a concurrent briefing schedule "maximizes judicial efficiency by presenting the court with the full panoply of dipositive issues at the same time," Opp. at 2, ignores these bedrock principles.

This Court twice in the last thirty days has granted similar, opposed stay requests pending resolution of immunity defenses raised by federal defendants. In *O'Brien v. United States*, the Court

---

[1] It matters not that these principles often arise in the context of requests by the federal government to stay *discovery*, rather than merits briefing. The attendant harms that would result here, as explained below, are arguably even higher than in cases where federal defendants successfully resist even limited discovery.

agreed that further proceedings should be stayed: "Because sovereign immunity is not merely a defense to liability but renders the United States *entirely immune* from suit," it must be resolved as expeditiously as possible. Civ. No. 4:20-cv-477(SDJ) (Nov. 12, 2020) (emphasis added) (citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994)). The Court pointed out specifically that "resolution of the United States' assertions of sovereign immunity is potentially case dispositive." *Id.* So too here. Similarly, this Court granted an opposed stay in *Greenlaw v. Klimek*, reasoning that the government's immunity defense must be considered as soon as possible in the litigation because it "is more than a right not to be held liable," but also a right not to be burdened by doomed litigation. Civ. No. 4:20-cv-0311-SDJ (Nov. 12, 2020) (considering qualified-immunity defense). Other courts in this district similarly have stayed discovery pending a resolution of threshold jurisdictional defenses asserted by *government* defendants. *See, e.g.*, Order Staying Discovery (Dkt. No. 39) in *Cypress Home Care, Inc. v. Qlarant Integrity Solutions, LLC*, No. 5:19-CV-42 (E.D. Tex. Dec. 12, 2019) (Schroeder, J.); Order Staying Discovery (Dkt. No. 55) in *Fidelis Diagnostics, Inc. v. Safeguard Services, L.L.C. et al.*, No. 4:10-CV-638 (E.D. Tex. Sept. 29, 2011) (Mazzant, J.) (granting government's motion to stay discovery until jurisdictional issue raised by government's motion to dismiss was resolved); Order Staying Discovery (Dkt. No. 77) in *N.W. Constr. Servs., L.P. v. Seraph Apts., L.P. et al.*, No. 6:08-CV-335 (E.D. Tex. Sept. 1, 2009) (Schneider, J.) (granting government's motion to stay discovery pending ruling on motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim). The rationale supporting stays of discovery in such cases is all the more compelling here, where briefing on Walmart's summary-judgment motion would not only burden DOJ but also invade the presumptively unreviewable province of prosecutorial discretion while presenting only abstract, hypothetical claims not capable of final resolution by this Court. *See* ECF No. 43, Mot. to Dismiss, at 7-9, 13 (explaining that, under controlling Supreme Court precedent, exercises of enforcement discretion are presumptively unreviewable); 16-20 (demonstrating that the abstract declarations Walmart seeks would require Court to issue unlawful advisory opinion).

Most tellingly, perhaps, the lengthy string cite Walmart provides for the proposition that "briefing jurisdictional and merits issues on parallel, simultaneous tracks is standard practice in the federal courts," Opp. at 2, contains *not one* on-point authority where a federal entity or official was

denied the right to have its immunity defense resolved before being forced to charge forth briefing the merits, let alone one involving a law-enforcement agency exercising prosecutorial discretion. Were Walmart's maneuvering here as routine as it portrays, surely it could identify analogous authority. On the contrary, all but two of those authorities concerned only private parties. And the only two cases in this string where any federal entities even were involved demonstrate, if anything, that Walmart's request flips convention on its head. In *Zirpolo v. Williams*, the parallel motions were filed *by the government* and presented certain threshold defenses more appropriate for summary judgment, including administrative exhaustion and statute-of-limitations. *See* No. 19-CV-2024, 2020 WL 3104078, at *1 (D. Colo. June 11, 2020). The order contains no suggestion that the merits of that complaint were briefed alongside defendants' jurisdictional and statutory defenses. Likewise, in *Harris v. Wilkie*, the Secretary of Veterans Affairs filed concurrent motions to dismiss and for partial summary judgment, presenting various threshold defenses. No. 18-CV-0071, 2019 WL 1077343, at *1 (D. Colo. Mar. 7, 2019). In other words, in the only two cases relied upon by Walmart where federal entities were sued, the concurrent motions resolved government defenses—not the merits. These authorities provide zero support for Walmart's contention that "standard practice" would require DOJ to brief the merits of Walmart's claim before this Court determines whether any waiver of sovereign immunity exists (particularly in light of Walmart's failure to identify any cause of action or to plead a justiciable case or controversy). On the contrary, DOJ's sovereign-immunity defense would effectively be lost were it forced to respond to Walmart's summary-judgment motion and, at this stage, provide its "reading" of the law, Opp. at 3.[2]

       *Second*, Walmart's lamentations about the "abomination" of "secret law" and its implicit charge that DOJ seeks to trap the company in liability for unclear obligations, Opp. at 4, are deeply disingenuous. Critically, Walmart has not mounted a facial challenge to any statute or regulation. It

---

[2] In addition to sovereign immunity, DOJ's motion to dismiss demonstrated that Walmart's complaint also is meritless, *inter alia*, for its failure to plead any federal cause of action, MTD at 14-16, and because it seeks a quintessential advisory opinion, *id.* at 16-20. Walmart has not pleaded any actual case or controversy, for myriad reasons explained in DOJ's dispositive motion. MTD at 20 n.12. Although those jurisdictional defenses are every bit as compelling, this reply focuses on sovereign immunity because the law is clear that immunity shields the government from the burden of *defending* litigation, not merely being held liable.

does not contend that the CSA itself, or any of DEA's rules promulgated thereunder, are themselves unlawful. That statutory and regulatory regime is the law, and it is no secret. Rather, Walmart seeks only to have this Court declare it innocent of violations of that legal framework, with no regard to historical or current facts of its dispensing and distribution practices. Opp. at 3. Absent this context, Walmart's demand that DOJ "defend [its] reading of the statute and regulations," seeks only an advisory opinion regarding a possible difference of opinion. *Id.* But there can be no doubt that the only law DOJ would purport to enforce can be found in the United States Code and the Federal Register—and those sources require no explication in the form of summary-judgment briefing before a Court for which no basis of jurisdiction has been provided. Most astonishingly, the claims Walmart purports to need clarity regarding already have been decided against Walmart by the judge presiding over the Opioid MDL. *See* ECF No. 43, Mot. to Dismiss ("MTD"), at Background § B; 19 n. 10. And if, as Walmart fears, DOJ eventually files suit against it, there will be no "secrets" at all; rather, all issues pertinent to DOJ's claims will be litigated in the proper procedural posture—*i.e.*, with evidence marshalled by the party bearing the burden of proof and facts necessary to apply the legal framework.

*Third*, as explained in DOJ's motion to stay, ECF No. 44, requiring DOJ to brief this particular motion before jurisdiction is assured would risk even greater harm than only the attendant burdens of responding to meritless litigation. The declarations Walmart seeks are vague, broad, and wholly divorced from the factual context in which it would be possible to apply a complex, important regulatory scheme. For example, it asks this Court to declare, *inter alia*, that there is no prohibition on "filling entire categories of prescriptions, without regard to the individual circumstances of each case"; that there exist no "duties on businesses that operate pharmacies, beyond the duties imposed on pharmacists themselves, to guard against filling invalid controlled-substance prescriptions"; and that there can be no liability for "dispensing controlled substances without documenting the resolution of any 'red flags' … only by knowingly filling a prescription outside the usual course of professional treatment." Mot. for Summ. J. at 29. These abstract proclamations, ungrounded in an actual controversy, constitute the very definition of an advisory opinion. Most tellingly, Walmart's final requested declaration, which is entirely concerned with pre-2018 liability, has no bearing on any

present action of any regulated entity and is concerned only with binding DOJ's hand in unfiled, hypothetical litigation.

All of these "issues" would require DOJ to open for judicial scrutiny core aspects of its deliberative, discretionary process in determining what charges, if any, to bring, and under what legal theories, because it would not be possible to counter Walmart's nebulous assertions without setting forth a contrary hypothetical fact pattern. Indulging Walmart's gambit would enable the targets of government investigations to force the government to divulge its evidence and potential legal theories before an enforcement suit has been authorized. Certainly, Walmart has identified *no precedent* whatsoever for requiring DOJ to divulge its potential litigation theories and submit substantive briefing conclusively setting forth the Department's view on a statute it administers before a civil enforcement action is filed. Quite the opposite: DOJ's motion to dismiss cited numerous cases where actual or would-be defendants in civil enforcement suits brought preemptive claims seeking "review" of federal agencies' prosecutorial efforts. *See* Mot. to Dismiss at 12-13, 18. Each of those suits was dismissed on threshold grounds without requiring the agencies to first defend the merits of their "reading" of the purportedly violated statute.

*Fourth*, Walmart's contention that concurrent summary-judgment and jurisdictional briefing "is particularly routine in cases involving agency actions, where the merits issues are often purely legal," Opp. at 2, is highly misleading. The only two authorities Walmart cites in support involved routine, record-review cases of final agency actions under the Administrative Procedure Act. *See* Opp. at 2 (citing *Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*, No. CV 18-2112, 2018 WL 5777397, at *3 (D.D.C. Nov. 2, 2018) and *Chamber of Commerce of U.S. v. IRS*, No. 1:16-CV-944, 2017 WL 4682050, at *1 (W.D. Tex. Oct. 6, 2017)). It is indeed common in APA cases for federal agencies promptly to produce an administrative record and brief threshold defenses, such as standing or the finality requirement, alongside notice-and-comment procedural challenges or contentions that a rule is arbitrary and capricious. In both of Walmart's cited authorities, the government raised standing (a matter often decided on summary judgment) and, in *Chamber of Commerce*, a statutory ground—not questions of immunity from suit entirely. Indeed, the local rules for the U.S. District Court for the

District of Columbia, where most challenges to final agency action are litigated, expressly contemplate prompt production of the administrative record—thus permitting a plaintiff to move for summary judgment—"simultaneously with the filing of a dispositive motion." *See* D.D.C. Loc. Civ. R. 7(n)(1). It is quite common, in fact, for federal agencies (through DOJ) promptly to produce a record in APA suits and then to move simultaneously for dismissal or, in the alternative, summary judgment. *See, e.g., NAACP v. Trump*, Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 15, No. 17-1907(CRC) (D.D.C. Nov. 8, 2017); *Northwest Immigrant Rights Project v. USCIS*, Mot. to Dismiss or, in the Alternative, for Summ. J. and Opp. to Pls.' Mot. for Summ. J., ECF No. 26, No. 1:19-cv-3283(RDM) (D.D.C. Feb. 18, 2020). But this is not an APA suit, as Walmart concedes, *see* Opp. at 3 n.1, and Walmart cannot rely on routine APA practice to justify its aggressive posturing. Its reliance on APA authority is particularly ironic because, as explained in DOJ's motion to dismiss, there is no agency action whatsoever here, much less final action—a core weakness in Walmart's pleading. *See* MTD at 10-14.

Finally, although Walmart certainly has no obligation to brief DOJ's jurisdictional defenses in opposing the stay request, it could have provided some reason for this Court to doubt whether DOJ's jurisdictional arguments will prevail. It did not; among other reasons, the sole case it cited to contend that the APA's waiver of sovereign immunity applies to this non-APA suit actually confirms the opposite. *See* Opp. at 3 n.1 (citing *Doe v. United States*, 853 F.3d 792, 798-99 (5th Cir. 2017) ("'[O]ur court has held that sovereign immunity is not waived by § 702 unless there has been 'agency action,' as that term is defined in § 551(13).'")). Without agency action, which clearly is lacking, Walmart cannot invoke § 702, and did not invoke that provision in its complaint. Walmart belatedly cites to § 702 via briefing, but this is plainly improper amendment through argument. *See Creamer v. United States*, 261 Fed. App'x 814 (5th Cir. 2008) (affirming dismissal of complaint for failure to "identif[y] any statute enacted by Congress that waives the United States' sovereign immunity"); *Juarez v. U.S. Dep't of Homeland Sec.*, No. A-08-CA-594-LY, 2009 WL 5214309, at *3 (W.D. Tex. Dec. 22, 2009) (dismissing complaint against federal agencies and officials for failure to "carr[y] the[] burden of showing Congress's unequivocal waiver of sovereign immunity in the complaint"). "Plaintiffs must plead the

basis on which they rely to avoid sovereign immunity" or risk dismissal "on a pleading defect." *Pingree v. United States*, No. 3:98-CV-2886-D, 1999 WL 714759, at *2 (N.D. Tex. Sept. 14, 1999); *Swenson v. Eldorado Casino Shreveport Joint Venture*, No. 15-CV-2042, 2017 WL 1334307, at *4 (W.D. La. Apr. 7, 2017) (rejecting "belated and improper attempts to amend the complaint" through arguments "to avoid dismissal"). Not that its invocation-via-briefing would help Walmart, since § 702 requires agency action, and here there is none. *See Doe*, 853 F.3d at 798-99.

Notably, Walmart has not claimed that it is suffering irreparable harm in the absence of the declarations it purports to need. Nor could it. Rather than forcing DOJ prematurely to brief an inappropriate merits motion, Walmart instead should oppose DOJ's motion in the timeframe provided under the local rules. This Court's normal briefing schedule, which permits 14 days for Walmart to oppose and seven for DOJ's reply, will permit this Court, should it choose, to schedule a hearing the first full week of January or shortly thereafter. In the unlikely scenario that any aspect of Walmart's complaint survived dismissal, DOJ then could oppose summary judgment promptly. Walmart cannot claim to need a more-expeditious resolution.

Walmart's attempt to force litigation on the merits is baseless. Particularly in light of the strength of Defendants' jurisdictional defenses to this entire action, this Court should exercise its "broad discretion to stay proceedings as an incident to its power to control its own docket," *Jones v. Clinton*, 520 U.S. 681, 706 (1997), to stay briefing on the merits of Walmart's complaint until after the Court has resolved the serious questions as to its jurisdiction. Allowing parallel briefing on complex questions of the proper interpretation of law, divorced from any factual context or scenario in which to apply those concepts, would be a waste of resources for the parties and the Court *and* would trample on principles of prosecutorial discretion—principles that warrant dismissal in the first instance. This Court should decline to accept Walmart's plainly unwarranted attempt to force premature merits briefing; instead, the Court should stay further briefing on Walmart's motion until the jurisdictional issues are resolved.

Dated: December 9, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch


*/s/  Kate Talmor*
KATE TALMOR
Maryland Bar
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 305-5267
Email: kate.talmor@usdoj.gov


*Attorneys for Defendants*