UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WALMART INC., <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, et al., <br><br> *Defendants*. | No. 4:20-cv-00817-SDJ |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION**

Walmart's portrayal of this suit as "an ordinary attempt by a regulated entity subject to plausible threats of enforcement … to obtain certainty about the scope of its statutory and regulatory duties" is disproven by its inability to identify *any* on-point authority where a similar gambit was permitted. *See* Opposition to Motion to Dismiss ("Opp."), ECF No. 66. Walmart admits that the declarations it seeks would bind the government's hand by "carry[ing] implications for [DOJ's] enforcement action, such as through principles of *res judicata* or collateral estoppel." Opp. 24. Yet it relies almost entirely on declaratory suits seeking to define liability between private parties and fails to cite any case where analogous pre-enforcement conduct review proceeded to judgment on the merits. The reasons are straightforward: Congress has not waived sovereign immunity for courts to police an agency's general efforts "construing and enforcing" a statute it administers, Opp. 18; no Article III jurisdiction exists to resolve alleged differences of opinion on the proper scope of a federal law, ungrounded in factual context; and private parties cannot interfere with ongoing enforcement actions by "borrowing" a cause of action to prosecute violations of federal law, Opp. 3. Were suits such as this cognizable, any would-be defendant in a federal enforcement action could run to court in its chosen forum, on its chosen timeline, and favorably frame its actions for the court and the public. That is not the law. Congress entrusted the DEA and the DOJ to enforce the Controlled Substances Act ("CSA"), and Walmart must defend its conduct in DOJ's now-pending action—not rush this Court to issue abstract rulings absolving it of liability without the context needed to apply the CSA.

## ARGUMENT

As an initial, overarching matter, DOJ's motion to dismiss ("Mot."), ECF No. 43, demonstrated that pre-enforcement suits analogous to this have been filed—they simply haven't succeeded. 12-13 n.5 (string cite of cases unsuccessfully seeking pre-enforcement review of a party's conduct). Tellingly, Walmart has no cogent argument to distinguish much of this authority and instead waives it away on the extraneous ground that such suits typically include Administrative Procedure Act ("APA") claims, whereas "Walmart is not suing under the APA" and instead "rel[ies] directly on the CSA." *See* Opp. 23-24. The fact that Walmart has avoided pleading an APA claim (a tacit admission that it would not be viable) does not entitle it to *greater* relief than the pre-enforcement suits where

1

APA and declaratory claims were coupled. This suit is no more justiciable merely because it omits an APA claim; the lack of agency action that would give rise to such a claim dooms this one, too.

Walmart's other attempts to distinguish analogous authority (while notably providing *none* where such claims proceeded to the merits) are unpersuasive. For instance, Walmart challenges DOJ's reliance on *Ohio Hospital Association v. Shalala* on the ground that the plaintiff there sued the wrong agency defendant. Opp. 10. But Walmart ignores the *Ohio Hospital Association*'s on-point confirmation that a declaration akin to the one Walmart seeks "would essentially be an advisory opinion … to the effect that if the Attorney General ever brings" suit, it "must fail because the Attorney General cannot prove an element of the claim." 978 F. Supp. 735, 740-41 (N.D. Ohio 1997) (rv'd in part on other grounds). Walmart's attempt to distinguish *New Jersey Hospital Association* is weaker still; it focuses on a discussion of ripeness, while ignoring the court's pronouncement that "a declaratory judgment that [plaintiffs] have not satisfied the scienter requirement of the [statute], when such an assertion would be a defense to a suit filed pursuant to the statute … is asking this [c]ourt for an advisory opinion on the merits of some potential future litigation." 23 F. Supp. 2d 497, 504 (D.N.J. 1998) (cited Opp. 10).

Walmart has not overcome any of DOJ's arguments and this suit must be dismissed.

## I.   NO WAIVER OF SOVEREIGN IMMUNITY EXISTS

Walmart's belated, unpleaded reliance on 5 U.S.C. § 702's waiver of sovereign immunity defies controlling circuit precedent. The Fifth Circuit unequivocally has held that § 702's sovereign-immunity waiver applies only where "agency action," as defined in the APA, is challenged. In *Alabama-Coushatta Tribe v. United States*, the court affirmed that sovereign immunity blocked "judicial review of the actions of various federal agencies" sought under several theories, including a Declaratory Judgment Act claim. 757 F.3d 484, 488 (5th Cir. 2014). "Section 702 contains two separate requirements for establishing a waiver of sovereign immunity … [f]irst, the plaintiff must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review." *Id.* Such agency action must be "particular and identifiable" and fall within one of the categories listed in 5 U.S.C. § 551(13), which encompasses *only* "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *See id.* at 489, 491 ("These requirements

2

apply to *any waiver* of sovereign immunity pursuant to § 702.") (emphasis added). The court affirmed dismissal because the "complaint fail[ed] to point to any 'identifiable action or event'" within the meaning of § 551(13) and instead contained only "allegations of past, ongoing, and future harms," "not to a particular and identifiable *action taken* by the government." *Id.* at 490-91 (emphasis added).[1] The Fifth Circuit has confirmed within this past year that "agency action" as defined in § 551(13) is required to invoke § 702's waiver. *See Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020) (holding sovereign immunity barred suit by state challenging federal maintenance of waterway and explaining that "the term 'action' as used in the APA 'is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract'").[2]

Walmart's attempts to shoehorn its grievances into statutorily defined "agency action" are baseless. It is self-evident that conduct so nebulous as "construing and enforcing the CSA" is not cognizable agency action, yet Walmart relies almost entirely on allegations of intangible agency "intent" to ground its challenge. For example, Walmart claims agency action exists because "DOJ intends to sue" for filling red-flag prescriptions; "DOJ intends to assert that … guidance letters … have the force of law"; "Defendants also intend to seek … liability on Walmart"[3] *See* Opp 18-19. Walmart itself is unable to determine whether these purported intentions should be considered a "rule," "order," or "sanction." *Id.* Regardless how it is framed, DOJ's *intention* to take action does not constitute "an agency statement of general or particular applicability … designed to implement, interpret, or prescribe law or policy," (*i.e.*, a rule), nor a "final disposition … of an agency" (*i.e.*, an

---

[1] Walmart points the Court to extra-circuit authority that directly conflicts with binding law. *See* Opp. 21 ("other Courts of Appeals do not require even 'agency action' to trigger the waiver," citing, *inter alia*, *Trudeau v. FTC*, 456 F.3d 178,187 (D.C. Cir. 2006)). But the Fifth Circuit repeatedly cited *Trudeau* in the same discussion it explicitly confirmed that, in this circuit, agency action under § 551(13) *is* required to rely on the immunity waiver. *See Alabama-Coushatta Tribe*, 757 F.3d at 488-90. More recently, in *Doe v. United States*, the court reiterated that "our court has held that sovereign immunity is not waived by § 702 unless there has been 'agency action,' as that term is defined in § 551(13)." 853 F.3d 792, 799.
[2] Walmart's invocation of *Ex Parte Young*, *see* Opp. 16, is misplaced; that decision famously confirmed that the Eleventh Amendment does not bar suits claiming that *state officials* have violated the U.S. constitution or federal law. *See* 209 U.S. 123, 159-60 (1908). It does not support Walmart's broad pronouncement that "actions seeking prospective relief from government officials have never been subject to sovereign immunity." Opp. 16.
[3] Most stunningly, Walmart points to "a criminal complaint recently filed by DOJ" *against another defendant.* Opp. 19 (referring to *United States v. Rodriguez*, No. 19-cv-1055 (N.D. Tex. May 2, 2019)). True, that lawsuit constitutes agency action—but Walmart is not "aggrieved" by action directed solely against another party.

3

order), nor a "prohibition, requirement, limitation, or other condition affecting the freedom of a person" or "other compulsory or restrictive action" (*i.e.*, a sanction). *See* 5 U.S.C. § 551(4), (6), (10).

Indeed, the closest Walmart comes to identifying *any* action is in pointing to informal "advi[ce] [to] pharmacists *not* to fill prescriptions that are 'doubtful, questionable, or suspicious." Opp. 18 (citing Compl. ¶ 51). But that allegation misses the mark as well, because regulations promulgated under the CSA impose such requirements, 21 C.F.R. §§ 1306.04(a), 1306.06, and Walmart is not challenging the regulations or substantive requirements they impose. Nowhere does the company contend that its pharmacists have a right "to fill prescriptions that are 'doubtful, questionable, or suspicious,'" Opp. 18, so that correct statement of the law by DEA cannot provide an entitlement to judicial review.

Sovereign immunity is not waived merely because some DOJ official expressed a view on the law or took some action, at some time, with some relevance to Walmart's claims.[4] DOJ and DEA undoubtedly have taken various actions to enforce the CSA over the years, but those actions do not form the basis of Walmart's suit. It is meaningless for Walmart to assert that "its suit is *all about* agency action," Opp. 18, because agency action "is a term of art that does not include all conduct," *Louisiana*, 948 F.3d at 321. For § 702 to apply, "the plaintiff must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review." *Alabama-Coushatta Tribe*, 757 F.3d at 489. That is not the case here because, as Walmart itself concedes, it "seeks declaratory relief" that DOJ has "acted unlawfully in construing … the CSA." Opp. 18. DOJ officials construe statutes every day and sometimes discuss those views with regulated parties; those legal views do not, on their own, constitute reviewable agency action.[5] In that vein, Walmart's reliance on *Ciba-Geigy Corp. v. EPA* for the proposition that "agency action encompasses an agency's interpretation of law," gets it nowhere. *See* Opp 20 (citing 801 F.2d 430, 435 (D.C. Cir. 1986)). That statement confirmed that an

---

[4] Walmart's reliance on a 2007 DEA letter is equally unhelpful. Opp 20 (citing ECF 21 Exh. 3, Letter from J. Rannazzisi). Walmart's suit does not itself challenge the letter (nor could it, given the statute of limitations, 28 U.S.C. § 2401). Nor can Walmart rely on the recently issued Notice of Proposed Rulemaking, Opp. 20, as it has no legal effect and is not subject to challenge before that proposal is codified in a final agency action.

[5] Although Walmart also purports to challenge DOJ's actions "enforcing the CSA," Opp. 18, it glaringly does not challenge or rely upon DOJ's affirmative enforcement suit, which was filed after Walmart's complaint but before its opposition. And for good reason: Walmart seemingly recognizes that it cannot collaterally challenge the basis for DOJ's complaint in this Court, but must instead oppose it in the court in which it is pending.

official letter sent by an EPA Director informing a regulated entity that it was "subject to 'appropriate enforcement action'" for violating a regulation unless it promptly "change[d] the labeling of its registered pesticide," 801 F.2d at 431, constituted agency action. A formal enforcement step like that bears no symmetry to Walmart's attempt to seek abstract pre-enforcement review of DOJ's purported thinking. The only "action" DOJ has taken against Walmart—the filing of its enforcement suit in Delaware—is not subject to collateral challenge here (and Walmart does not attempt to do so). Walmart does not challenge any discrete activity, so its request for this Court to provide advisory "guidance on Walmart's … *current* and *future* conduct," Opp. 2, must fail.

The authorities on which Walmart relies are readily distinguishable. In *Doe*, the Fifth Circuit found agency action where the government "accused Doe of a crime without indicting him, without introducing evidence …, and without allowing Doe to challenge that evidence." 853 F.3d 792 at 800. Those actions had taken place in a criminal proceeding where the plaintiff was identified publicly as a coconspirator; the government had taken multiple "agency actions" including filing an indictment and presenting sentencing evidence, then "failed to provide relief or a remedy." *Id.* Such concrete actions are fundamentally distinguishable from the purported *intentions* to act challenged here. And in *Alexander v. Trump*, agency action was found in the failure to investigate and act upon threats of bodily harm. 753 F. App'x 201, 206. Walmart does not allege any failure to fulfill mandatory duties here.

The weakness of Walmart's efforts to avoid controlling precedent construing § 702 is underscored by its meritless plea for this Court to "resolve[] in Walmart's favor" "[a]ny doubt" over whether sovereign immunity applies. Opp. 21. Even were there any doubt as to the law, the benefit of that doubt works in the other direction: Waivers of sovereign immunity "must be unequivocally expressed … [and] construed strictly in favor of the sovereign." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992) (internal citations omitted); *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."). Under these precepts, this Court cannot scour Walmart's complaint for any possible "action" DOJ ever has taken—a waiver of immunity exists only where *specific* "agency action" is alleged to have caused "legal wrong," *see* 5 U.S.C. § 702.. And this Court certainly is not empowered to "appl[y]

5

liberally" the definition of agency action "to minimize the gap between the Fifth Circuit" and "other circuit's reading of the law." Opp. 21. This Court is bound both to strictly construe waivers of immunity and to apply higher authority—not to harmonize binding law with that of other courts.[6]

No waiver of sovereign immunity applies for the additional reason that Walmart's claim challenges matters "committed to agency discretion by law," 5 U.S.C. § 701(a)2). Section 702's waiver is inapplicable where this exception applies. *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). Walmart's protestation that it "is not seeking to enjoin an enforcement action" is disingenuous. It admits seeking a declaration that "might carry implications for the enforcement action," but urges that since it doesn't seek an explicit injunction barring DOJ's enforcement suit, § 701(a)(2) does not apply. Opp. 24. Walmart is wrong. *Heckler v. Chaney* confirmed that "exercises of 'prosecutorial discretion'" are *unreviewable* because such actions constitute the paradigmatic example of agency action committed to discretion by law. 470 U.S. 821, 828-33 (1985). Walmart's attempt to distinguish that precedent rings hollow in light of its own admission that it seeks to challenge such core prosecutorial and enforcement decisions as, *e.g.*, DOJ's "inten[t] to pursue a civil enforcement action" on purportedly invalid legal theories, or DOJ's "inten[t] to sue Walmart for filling prescriptions when there were … red flags." Opp. 18.[7] The relief sought matters not: There is no question that DOJ's decisions "to pursue a civil enforcement action" under specified legal theories or "seek … liability" for unlawful conduct fall within the core of prosecutorial discretion. *Id.* Far from seeking "desperately [] to hide their views of the CSA from judicial scrutiny," Opp. 25, DOJ recently brought suit setting forth both its views of "what the law requires," *id.*, and concrete allegations of Walmart's unlawful behavior. Walmart must defend itself there, not seek abstract legal declarations here. Because DOJ's decisions whether, and how, to enforce the CSA are committed to its discretion, sovereign immunity applies.

---

[6] Walmart's contention that "a more demanding threshold for 'agency action'"—*i.e.*, one satisfying the Fifth Circuit's construction of the APA—"would create a troubling gap in the law" by insulating from review "specific agency misconduct" is misguided. *See* Opp. 21. Walmart's complaint alleges that DOJ interprets the CSA to prohibit more conduct than the statutory text supports—which, even if true, does not approach "specific agency misconduct."

[7] Walmart's statement that cases applying *Heckler* are "easily distinguished" because they "involved challenges to agency decisions to initiate proceedings," Opp. 24-25, is bizarre given that Walmart itself challenges DOJ's *intent* to initiate proceedings. Similarly, its attempt to cabin *Heckler* as applying where a plaintiff seeks to compel—not block—enforcement action, *id.*, ignores that decision's lengthy discussion of the unreviewable nature of *prosecutorial discretion*. 470 U.S. at 828-33.

## II. WALMART'S COMPLAINT DOES NOT PRESENT A CASE OR CONTROVERSY

DOJ's motion demonstrated that "Walmart asks this Court to issue a quintessential advisory opinion regarding the proper interpretation of the CSA and its implementing regulations … unmoored from any concrete dispute between the parties or factual basis in which to apply the regulatory framework." Mot. 18, 16-21. The abstract declarations Walmart seeks, purporting to interpret the law but divorced from any factual context in which to apply it, would present no less of an advisory opinion now than before DOJ filed suit. *See* Mot. 16-21 (establishing that Walmart's complaint fails to present an Article III controversy). Conversely, DOJ's complaint sets forth detailed allegations regarding Walmart's unlawful conduct, and relies on its actual legal theories—not supposition as to what they may be. Should Walmart genuinely desire to remove "this pall of uncertainty" by challenging DOJ's interpretations, Opp. 7, it is free expeditiously to challenge *that* properly filed action.[8] Walmart's charge that DOJ misled this Court in pointing out that *Walmart had not pleaded* a case or controversy is groundless. Opp. 2, 7, 8. Nowhere did DOJ disclaim "the existence of a real legal dispute between the parties" or "object that there is no 'case or controversy' between them," as Walmart misportrays, Opp. 2, 7. On the contrary, DOJ argued that, "[u]nless and until DOJ brings the civil action Walmart fears, no such [Article III] dispute exists—and even then, Walmart must present its defenses in response to claims DOJ actually has asserted, not straw-man arguments it thinks DOJ will present." Mot. 19. No statement in DOJ's motion is inconsistent with the now-pending enforcement suit.

The cases on which Walmart relies provide no support for its gambit. Lacking on-point authority, it once again misconstrues DOJ's position as arguing that a regulated entity can *never* mount a pre-enforcement challenge and must "wait to make its legal arguments until the government initiates … enforcement." Opp 8. But DOJ explained that "facial pre-enforcement challenges to supposedly invalid *statutes or regulations* sometimes are justiciable," yet "precedent does not support [the DJA's] use to thwart government enforcement [] by seeking judicial review of a purported *interpretation* of a concededly valid regulation prior to that interpretation manifesting in an agency action." Mot. 15-16.

---

[8] Walmart's admission that DOJ's affirmative suit presents a "concrete dispute" that will not be resolved "expeditiously," Opp. 24, concedes that it is not vulnerable to dismissal for failure to state a claim.

7

DOJ's argument is borne out by Walmart's own cases. The case on which it principally relies, *Susan B. Anthony List v. Driehaus*, did not establish that "pre-enforcement review" is available wherever "circumstances 'render the threatened enforcement sufficiently imminent." *See* Opp. 5 (citing 573 U.S. 149, 159 (2014)). Rather, the Court merely confirmed that a threat of prosecution can provide the injury for Article III standing—which DOJ has not challenged here. More importantly, the opinion discusses at length the circumstances in which a party can challenge the validity of an allegedly unconstitutional *statute*; nowhere does it suggest that a party can file a federal claim to resolve a supposed disagreement over the proper *reach* of a concededly valid statute. *See* 573 U.S. at 158-62. Walmart does not allege that the CSA is unlawful—only that DOJ is reading it too broadly—and thus *Susan B. Anthony List* is inapposite. *Abbott Labs. v. Gardner* is even less helpful. That case confirmed that a challenge to duly promulgated regulations (*i.e.*, final agency action) will sometimes be ripe before a regulated entity has been charged with a violation. The ability to challenge the *validity* of agency regulations under the APA, as in *Abbott Labs.*, in no way supports a claim seeking an advisory opinion on whether *conduct* violates a concededly valid regulation. Walmart does not suggest DEA's regulations themselves are unlawful, so *Abbott Labs.* has no relevance. Mot. 15-16. And Walmart's attempt to distinguish *Public Service Commission of Utah v. Wycoff County*, 344 U.S. 237 (1952), ignores the Supreme Court's admonition that declaratory judgments not be used to resolve abstract differences of opinion:

> A maximum of caution is necessary in the type of litigation … where a [declaratory judgment] ruling is sought that would reach far beyond the particular case. … The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

*Id.* at 243-44. Because those requirements are not met, this suit "exceeds any permissible discretionary use of the Federal Declaratory Judgment Act." *Id.* at 245; *id.* at 246 ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").

Were pre-enforcement challenges to agency *interpretations* of the law "well-established," as Walmart insists, Opp. 8, surely it could provide this Court with at least one relevant example. *But see supra* 1-2 (on-point authorities dismissed on threshold grounds). This distinction is dispositive: Pre-

8

enforcement review is limited to allegedly invalid laws and regulations, not ethereal "disputes" over an agency's alleged reading of those requirements in the absence of agency action, let alone *final* action cognizable under § 704.

### III. DOJ'S AUTHORITY TO ENFORCE FEDERAL LAW DOES NOT PROVIDE WALMART A CAUSE OF ACTION

As demonstrated in DOJ's opening brief, Walmart cannot rely on the Declaratory Judgment Act ("Act") because it has no cause of action to support the claim. Walmart's portrayal of the Act as "allow[ing] a party facing a threatened lawsuit to preemptively invoke the cause of action underlying that suit," Opp. 12, sweeps far too broadly. True, the Act sometimes permits would-be defendants to determine the existence or extent of liability in advance of an adversary's claim. It often is used to obtain early resolution of common-law or statutory claims between private parties—*i.e.*, contract, insurance, or trademark disputes. Mot. 15. But no authority Walmart cites suggests that private litigants can use the Act to sue the government using a cause of action provided only to the government—*i.e.*, a statute that does not allow *any* private party to file suit, on any set of facts. Walmart's clamoring that there is "nothing unusual" in its desire to "rely on" "DOJ's cause of action under the CSA," Opp. 1, is disproven by its complete lack of analogous authority.[9]

The glaring omission here is Walmart's failure to identify even *one* case in which a plaintiff suing the government was permitted to borrow as its cause of action a statute enforced by the government that contains no private right of action. Walmart's claim does not fail because "a declaratory plaintiff needs its own 'private right of action,'" Opp. 15, but because it needs a federal *cause of action* and cannot rely on a statute that permits suit only by the government. Were the law otherwise, Walmart plainly could cite an example. The authorities on which it relies involve only causes of action cognizable in a suit by private litigants—claims that, in theory, could be brought by either party depending on the facts. *See Domain Prot., LLC v. Sea Wasp, LLC*, No. 18-cv-0792, 2019 WL 6255733, at *6 (E.D. Tex. Nov. 22, 2019) (contract, conversion, and related common-law claims);

---

[9] Walmart's discussion of federal-question jurisdiction once again confuses legal doctrines. *See* Opp. 13 (discussing suits that arise under state law). DOJ has not argued that no federal question exists (because Walmart plainly asks this Court to opine on a federal law); rather, DOJ has demonstrated that no *cause of action* underlies Walmart's declaratory claim.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.118, 128–29 (2007) (patent suit); *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197–98 (2014) (same); *Gaar v. Quirk*, 86 F.3d 451, 454 (5th Cir. 1996) (medical malpractice); *Severe Records, LLC v. Rich*, 658 F.3d 571, 581–82 (6th Cir. 2011) (copyright); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) (workers' compensation); *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 607 (5th Cir. 1983) (breach of contract). The reason for Walmart's failure to cite cases where a private litigant "borrowed" a governmental cause of action is because those claims fail, no matter how artfully pleaded. *See supra* 1-2.[10]

Were Walmart correct, the APA's cause of action—and the limitations on judicial review Congress delineated—would be meaningless. No litigant would need § 704 to challenge agency action if it could simply "borrow" the cause of action provided *to the agency* in its organic statute to seek declaratory judgment reviewing the agency's actions. Walmart essentially is asking this Court to imply a new, non-APA cause of action to sue the government—something unsupported by caselaw that would infringe the separation of powers. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (expressing "doubt about our authority to recognize any causes of action not expressly created by Congress").

Finally, Walmart again relies on suits challenging the constitutionality of statutes. *See* Opp. 16. Its refusal to acknowledge the distinction in that type of claim is displayed in its selective quoting of *MedImmune* for the proposition that "[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—*for example, the constitutionality of a law threatened to be enforced.*" *See* Opp. 13. Omitting the italicized phrase, Walmart ignores that, far from blessing use of the declaratory procedure to quell a threat of government enforcement, the Supreme Court was referring to the unremarkable fact that challenges to the lawfulness of statutes often are cognizable. No authority suggests that a private litigant may rely on the government's authority to enforce federal law for the cause of action supporting a declaratory claim, so this suit must be dismissed.

---

[10] Walmart's contention that patent claims are "instructive" because they "do not create a 'private right of action' for accused infringers to sue patent holders," Opp. 15, fails; the patent laws do create a *private* right of action, so the Act allows the procedural posture to be inverted. That does not support use of the Act by a litigant that could *never* bring a claim under the relevant statute.

Dated: January 15, 2021								Respectfully submitted,

										JENNIFER B. DICKEY
										Acting Assistant Attorney General

										BRIGHAM J. BOWEN
										Assistant Branch Director
										Federal Programs Branch

										*/s/ Kate Talmor*
										KATE TALMOR
										Maryland Bar
										Trial Attorney
										U.S. Department of Justice
										Civil Division, Federal Programs Branch
										1100 L Street NW
										Washington, DC 20530
										Tel: (202) 305-5267
										Email: kate.talmor@usdoj.gov


										*Attorneys for Defendant*

11