UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WALMART INC.,<br><br>                      *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al.,<br><br>                      *Defendants*. | No. 4:20-cv-00817-SDJ |

## DEFENDANTS' SUPPLEMENTAL POST-HEARING BRIEF

Oral argument on DOJ's motion to dismiss confirmed that Walmart cannot carry its burden to establish subject-matter jurisdiction. Pressed to identify any "agency action," as defined in 5 U.S.C. § 551(13), that could support a finding that Congress has waived sovereign immunity, counsel confirmed that Walmart "alleges … that the government has stated its intent to sue" and "[t]hose threats in and of themselves constitute agency action." Hearing Transcript, January 26, 2021 ("Tr."), 21:4-8. That wildly expansive interpretation is irreconcilable with precedent and contrary to Congressional intent in delineating the parameters of judicial review of agency actions. This suit should be dismissed.

Regarding sovereign immunity, Walmart's contention that "the Fifth Circuit does stand alone in requiring agency action to trigger the 702 sovereign immunity waiver," Tr. 33:17-18, is incorrect. Setting aside the irrelevance of a circuit split—since Fifth Circuit precedent controls here—this Circuit's rule is rooted in Supreme Court pronouncement: "Sections 702, 704, and 706(1) [of the APA] all insist upon an 'agency action,' either as the action complained of (in §§ 702 and 704) or as the action to be compelled (in § 706(1))." *Norton v. South. Utah Wilderness All.*, 542 U.S. 60, 62 (2004). And the Fourth Circuit recently published a lengthy examination of the textual and policy reasons

1

supporting its determination that—just as the Fifth Circuit repeatedly has held—"subject matter jurisdiction is lacking if the plaintiff fails to challenge a particular 'agency action' that is fit for review," limited to those actions falling within § 551(13), not "all conduct on the part of the government." *City of N.Y. v. Dep't of Defense*, 913 F.3d 423, 430-33 (4th Cir. 2019) (citing *Vill. Of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013)). The court elucidated:

> [E]ach of the terms that comprise the definition of 'agency action' is limited to those acts that are 'circumscribed' and 'discrete.' … [T]he plaintiff must therefore identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations. … This distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers. Courts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials. We are woefully ill-suited, however, to adjudicate generalized grievances asking us to improve an agency's performance or operations. In such a case, courts would be forced either to enter a disfavored 'obey the law' injunction, … or to engage in day-to-day oversight of the executive's administrative practices. Both alternatives are foreclosed by the APA.

*Id.* at 431-32 (citations omitted).[1] The court went on to make plain that review of agency action is *only available* for acts that "determine rights and obligations" and have "an immediate and practical impact," lest "judicial review … reach into the internal workings of the government." *Id.* Although plaintiffs in that case sought to compel agency action under § 706, the court grounded this analysis in application of § 702's waiver and left no doubt that "[t]hese two requirements, which flow directly from the APA's text, apply to all challenges to agency action and accordingly limit judicial review generally." *Id.* at 432. The Fourth Circuit's interpretation is well-reasoned and accords with the law in this circuit.

Walmart's inability to point to any concrete "agency action" susceptible to review dooms this suit; there has been no circumscribed, discrete step taken against Walmart with practical impact (aside from the filing of a complaint in Delaware, which Walmart does not, and could not, challenge here). As the Court noted, Walmart's arguments are, indeed, "slippery," Tr. 96; alleged "threats" by DOJ to

---

[1] It is difficult to conceive of any clearer example of a disfavored "follow the law" order than a declaration that "Defendants must follow their own regulations and may not base any enforceable legal positions on the alleged violation of agency guidance rather than obligations found in a statute or duly promulgated rule or regulation." *See* Compl., Prayer for Relief, ¶ 1.I.

enforce federal law (better described as settlement communications) are neither "rules," 5 U.S.C. § 551(4), nor "sanctions," *id.* § 551(10); *see* Tr. 76:9–77:5.

And "the DEA Pharmacist's Manual [and] other enforcement actions against other parties," at which Walmart's counsel grasped in an attempt to salvage its Complaint, Tr. 76:24-25, have no immediate and practical impact on *any party*, much less Walmart. That is because the Pharmacist's Manual constitutes nonbinding guidance to aid regulated entities in interpreting DEA's regulations—not legal obligations on which DOJ could base an enforcement action, or commands for regulated entities to modify behavior issued under the threat of enforcement. And complaints filed against other parties also have no legal impact, even against the defendants, unless and until those suits are litigated to a final, favorable judgment for the government. *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950). None of the matters to which Walmart points constitute agency action against it, so Walmart's claim cannot fall within the ambit of other "pre-enforcement" decisions on which it relies. *See Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436-37 (D.C. Cir. 1986) (finding final agency action where EPA Director issued official letter "emphatically requir[ing] Ciba-Geigy's immediate compliance," based on its "practical effect," "significant legal effect" and that it was issued by a top official with ultimate decisionmaking authority) (internal alterations omitted); *Abbott Labs. v. Gardner*, 387 U.S. 136, 139-41, 147-50 (1967) (analyzing legislative history to confirm that Congress intended § 704 to provide pre-enforcement review of *final agency actions* and distinguishing facial challenge to regulation from the attack on enforcement decision disallowed in *Ewing*); *see also Frozen Food Express v. United States*, 351 U.S. 40, (1956) (finding reviewable under the APA an agency order with "immediate and practical impact on" regulated entities). Walmart's invocation of APA cases while insistently eschewing reliance on that statute is ironic and disproves its assertion that "pre-enforcement review" is generally available outside challenges to final agency actions or enacted statutes.

Walmart wrongly insists that "the legion of declaratory judgment actions" it cites disproves DOJ's argument that "the government is special" in its amenability to suit. Tr. 80:8-15. *Of course* the government, as a litigant, is special—as recognized in doctrines including, but not limited to, sovereign immunity, the availability of governmental privileges, the presumption of regularity, and the

3

recognition of separation-of-powers concerns in suits against the executive. Moreover, Walmart's argument runs headlong into the Supreme Court's admonitions against implying new causes of action—not to mention causes of action against the executive branch. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991). The Supreme Court "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases," *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018) (citation omitted), and a holding permitting *private litigants* to haul DOJ into court relying for a cause of action on DOJ's authority to enforce federal law would defy the "caution," *id.*, the Court has mandated. *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter."). If Congress intended the Declaratory Judgment Act ("DJA") to work in an identical fashion against the federal government as it operates against private parties, surely Walmart would find support for that proposition in the statute itself and the caselaw. On the contrary, Walmart's reliance on cases where the APA provides the cause of action proves the proper operation of the DJA against federal entities.

Relatedly, the Court noted during the hearing on DOJ's motion that it "ha[d] not seen, expressly at least, [] a distinction of saying *but if only the government can bring that cause of action*" that it cannot be relied upon by a private litigant in a declaratory suit. Tr. 82:3-6. Respectfully, DOJ does not agree that the cases primarily discussed at argument, *Abbott Labs* and *Susan B. Anthony List*, "belie that notion." *Id.* 5-6. Nor is Walmart correct in continuing to insist that these cases "could not be clearer that the Declaratory Judgment Act is a venue for relief against government threats of enforcement." Tr. 81:18-21. Neither case supports that broad pronouncement. As DOJ repeatedly has shown, the former confirms only that Congress intended to permit review of final agency actions under § 704 (and demonstrates proper operation of the DJA—as a vehicle for additional relief in conjunction with, not a substitute for—the APA), while the latter concerned standing to challenge a statute as unconstitutional. In both of these cases—unlike here—either the APA or the Constitution provided

a cause of action. They simply do not suggest that litigants may pre-empt a federal law-enforcement action by pre-litigating the defenses to obtain an advisory opinion in the forum of their choosing.

Even if Walmart could overcome these jurisdictional hurdles, it could not establish a sufficient basis for this Court to exercise its discretion in deciding a declaratory claim in light of, among other reasons, the pendency of the Delaware action. *See* MTD at 16 n.8 (citing *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387-88 (5th Cir. 2003) (identifying factors counseling against review of declaratory claim, including whether the plaintiff engaged in forum shopping, filed suit to preempt an anticipated suit from defendants, and whether "possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist")); *see also Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 950 (E.D. Mich. 2015) (declining to exercise jurisdiction over analogous pre-enforcement claim).

It bears repeating that cases cited by DOJ *have* sought relief for analogous claims, *see* Mot. to Dismiss at 12-13, 17-18, they simply also included APA claims (the proper vehicle for challenging agency action for non-constitutional claims), and often are dismissed on those grounds. Previous, unsuccessful litigants in cases cited by DOJ would not have had justiciable pre-enforcement claims *but for* the presence of an APA claim, as Walmart illogically suggests. And additional support for the government's position can be found. In *Newton v. Duke Energy Florida, LLC*, 2016 WL 10564996, at *2-4 (S.D. Fl. Sept. 21, 2016), the court explicitly rejected a plaintiff's attempt to seek relief under the Declaratory Judgment Act by relying on two federal statutes and the U.S. Constitution to provide the underlying cause of action. The court explained that "the DJA cannot substitute for a private right of action." *Id.* The relevant statutes "are not privately enforceable" because "[o]nly judicial enforcement by the Attorney General is permitted," so "the DJA does not provide Plaintiffs with an avenue for relief under the applicable statutes." *Id.*[2] And in *Lac Vieux Desert Band of Lake Sup. Chippewa Inds. v.*

---

[2] *Cf. Jones v. Hobbs*, 745 F. Supp. 2d 886, 893-4 (E.D. Ark. 2010) ("[Plaintiffs] seek to bypass the congressionally mandated enforcement schemes for the … CSA; in effect, they seek private enforcement of those statutes by means of a declaratory judgment. Congress committed complete discretion to the executive branch to decide when and how to enforce those statutes and authorized no private right of action for the enforcement of those statutes. The Declaratory Judgment Act does not authorize a bypass of that enforcement scheme.").

5

*Ashcroft*, pre-enforcement review was denied of a formal letter, written by a high-ranking DOJ official, opining that certain conduct was unlawful and could subject the plaintiff to civil and criminal penalties. 360 F. Supp. 2d 64, 66-69 (D.D.C. 2004). That court confirmed that it lacked jurisdiction to review the legal basis of a future enforcement action because Congress's "detailed enforcement and administrative review system" under the relevant statute preempted any attempt to obtain pre-enforcement review under the DJA. *See also C&E Servs., Inc. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("A judicial declaration telling [an agency] how to interpret the [Act] would constitute an end-run around Congress's clear intent that the [agency] interpret and enforce the [Act] in the first instance.").

Moreover, the First Circuit's recent opinion in *New Hampshire Lottery Commission v. Rosen*, No. 19-1835 (slip op.), demonstrates the force of DOJ's arguments for dismissal. Walmart once again mischaracterized DOJ's position by arguing that *New Hampshire Lottery* "goes to show that the government is wrong when they argue that agency interpretations are not fit for challenge under the declaratory judgment action." Tr. 32:23-33:1. On the contrary, DOJ has demonstrated that agency interpretations are not reviewable until they manifest in an *agency action*, *e.g.*, Tr. 100:13-15, and explained repeatedly at argument that the "final agency action" requirement is a fact-bound inquiry that can encompass various actions other than a duly promulgated regulation. Tr, 63:19-25. Although DOJ continues to disagree with the district court's determination that an OLC Opinion constitutes final agency action, *N.H. Lottery Comm'n v. Barr*, 386 F. Supp. 3d 132, 145 (D. N.H. 2019), the unassailable fact remains that plaintiff there pleaded an APA claim and thus invoked a statutory cause of action. And even though the appellate panel did not reach the question whether *additional* relief under the APA was warranted (because the DJA provided sufficient relief), there is no daylight between DOJ's position here and the First Circuit's holding. In *New Hampshire Lottery*, the presence of an APA claim provided a vehicle to seek declaratory relief—regardless whether relief separately was granted under the APA. This demonstrates the proper operation of the DJA in suits against the government—where declaratory relief against an agency is sought, the APA or the federal Constitution provides the relevant cause of action.

Respectfully, DOJ disagrees with the Court that *New Hampshire Lottery* is at all "helpful to [Walmart's] cause on the case or controversy issue." Tr. 33:10-13. The OLC opinion reviewed there had determined that *existing activity* being undertaken by states in their sovereign capacities violated a federal statute. In other words, the DOJ component authorized to issue legal interpretations binding on the executive branch issued a formal opinion amounting to a cease-and-desist demand on sovereign states, accompanied by a very concrete threat of criminal prosecution. Walmart is not arguing that DOJ threatens to criminally prosecute it for concrete activity in which it currently engages. Of course a state seeking review of the purported criminality of its current conduct, at-odds with a formal DOJ opinion, presented a concrete controversy. But it has no bearing on the fact that the declarations sought by Walmart here would constitute unlawful advisory opinions setting forth vague legal principles, divorced from necessary factual context, on whose purported view of the law is superior.

Finally, the hemp cases raised by the Court at argument provide no support for Walmart's position. True, both *New Hampshire Hemp Council v. Marshall* and *Monson v. DEA* involved requests for declaratory judgment clarifying whether the CSA reaches particular conduct. 203 F.3d 1 (1st Cir. 2000); 589 F.3d 952 (8th Cir. 2009). And the plaintiffs' arguments were rejected on the merits, not threshold grounds. But there is no indication in either case that the issues of sovereign immunity or the necessity of a cause of action were raised, briefed, or decided. Undersigned counsel can make no representations about the litigation strategy in other cases, including whether consideration was given to raising sovereign immunity and the cause-of-action requirement. But the courts did not raise them *sua sponte* and certainly did not hold that DOJ's authority to enforce federal law under the CSA provides a cause of action under the DJA. The lack of treatment in those cases does nothing to undermine the applicability of these threshold defenses here. Indeed, "drive-by jurisdictional rulings" where jurisdictional bases are "assumed by the parties" and "assumed without discussion by the Court" "have no precedential effect." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 91 (1998); *see also USPPS, Ltd. V. Avery Dennison Corp.*, 647 F.3d 274, 283 (5th Cir. 2011). On that ground alone, these decisions have

no bearing on the questions presented for resolution by this Court.[3] Moreover, the government *is* standing on its rights here to insist upon an unequivocally expressed waiver of sovereign immunity and the existence of a cause of action *invocable by the Plaintiff* to support this suit. Both are lacking, and Walmart seeks an advisory opinion to boot.

A bright-line legal rule distinguishes Walmart's suit from the authorities on which it relies: "Pre-enforcement review" is not available to litigate the *defenses* one might raise in civil enforcement of a concededly valid statute, regulation, or other final agency action, rather than the lawfulness of the legal restriction itself. It remains the case that Walmart has not identified a single case holding that a declaratory plaintiff may eschew the APA's restrictions and rely for its cause of action on an agency's ability to sue under a statute it administers (much less in a law-enforcement context). And it has failed to identify any limiting principle that would prevent its expansive interpretation of the DJA from allowing every federally regulated entity from running to court in pursuit of a declaration blessing its conduct before the agency charged with oversight can determine whether to bring an enforcement challenge. The APA and DJA do not establish a system by which private parties can preemptively demand advisory opinions from federal judges on the contours of their regulatory responsibilities. A contrary result would severely impede agencies' ability, in the first instance, to formulate policy and enforce the legal regimes over which Congress has granted them authority. Moreover, Walmart can (and must) present all its defenses to the civil enforcement action filed by the United States in the District of Delaware—indeed, Walmart admitted in its opposition that, "[e]ven if Walmart obtains the requested clarification of its legal obligations," DOJ's affirmative suit will proceed. Opp. 24. Dismissal here thus respects the United States' sovereign immunity and Congress' careful delineation of judicial review of agency action, protects the limited jurisdiction of federal courts against requests for improper advisory opinions, and still preserves Walmart's right to defend itself robustly.

This suit must be dismissed.

---

[3] Unlike here, both *NH Hemp Council* and *Monson* involved arguable agency actions—a final DEA administrative decision (albeit involving a different party) in the former, and the denial of a registration request in the latter.

Dated: January 29, 2021                    Respectfully submitted,

MICHAEL GRANSTON
Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

*/s/ Kate Talmor*
KATE TALMOR
Maryland Bar
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 305-5267
Email: kate.talmor@usdoj.gov


*Attorneys for Defendant*