

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2021

Lyle W. Cayce
Clerk

**Certified as a true copy and issued
as the mandate on Feb 14, 2022**

Attest: *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 21-40157

WALMART INC.,

              *Plaintiff—Appellant*,

*versus*

UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION;
*Acting Administrator* D. CHRISTOPHER EVANS;
MERRICK GARLAND, *U.S. Attorney General*,

              *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CV-817

_____

Before HIGGINBOTHAM, SMITH, and HO, *Circuit Judges*.

# JUDGMENT

  This cause was considered on the record on appeal and was argued by counsel.

  IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

No. 21-40157

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, concurring.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2021

Lyle W. Cayce
Clerk

No. 21-40157

WALMART INC.,

*Plaintiff—Appellant,*

*versus*

U.S. DEPARTMENT OF JUSTICE;
U.S. DRUG ENFORCEMENT ADMINISTRATION;
*Acting Administrator* D. CHRISTOPHER EVANS;
MERRICK GARLAND, *U.S. Attorney General,*

*Defendants—Appellees.*

Appeal from the United States District Court
for the Eastern District of Texas
No. 4:20-CV-817

Before HIGGINBOTHAM, SMITH, and HO, *Circuit Judges.*

JERRY E. SMITH, *Circuit Judge*:

Walmart challenges the government's interpretation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"), as it applies to pharmacists who dispense prescription opioids. Or at least, Walmart questions what it *says* are the government's interpretations of the CSA—it points to no rule, guidance, or other public document setting forth the positions it seeks to contest. Because it identifies no agency action, as that term is used in the

No. 21-40157

Administrative Procedure Act ("APA"), the suit is barred by sovereign immunity. And even if it were not, Walmart's failure to contradict a definite government position means that it has not demonstrated the existence of a ripe case or controversy, as required by Article III. For both reasons, we affirm the judgment dismissing for want of subject-matter jurisdiction.

## I.

This case arises from the government's ongoing efforts to combat the epidemic of opioid abuse. Opioids, legal and illegal, are regulated under the CSA, which is administered by the Drug Enforcement Administration ("DEA"). Though opioids are prescribed by doctors, those prescriptions must be filled by pharmacists, who may refuse to fill prescriptions that they deem suspicious, such as prescriptions by disreputable doctors or those involving certain drug combinations. Walmart dispenses prescription opioids through its pharmacies; from 2002 to 2018, it also acted as a distributor, shipping opioids from a distribution center to its own pharmacies.

Walmart maintains that it has consistently taken appropriate steps to comply with the CSA and keep its pharmacists from dispensing opioids to those who should not receive them. Walmart has long allowed its pharmacists to refuse to fill individual prescriptions that they believed were not legitimate; it now has policies allowing pharmacists or Walmart itself categorically to refuse to fill prescriptions by individual doctors. Those policies are sufficiently stringent that they have provoked resistance, including administrative investigations and warnings from state regulators as well as complaints by private-sector medical associations. Those groups generally maintain that Walmart's pharmacists are unduly intervening in the doctor-patient relationship and tarnishing the reputations of individual doctors, some of whom have filed defamation suits.

At the same time, the Department of Justice ("DOJ") has investi-

gated Walmart for violations of the CSA. Despite abandoning an effort to bring criminal charges against Walmart, DOJ formed a working group to investigate Walmart for civil liability.

Walmart thus found itself "between a rock and a hard place"—stringent restrictions on opioid distribution expose it to suit from state and private-sector actors, while lax restrictions expose it to suit from the federal government. To resolve this dilemma, Walmart sued under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), in October 2020, requesting that the court make several declarations about the precise limits of pharmacists' obligations under the CSA. Those requested declarations are as follow:

> A. Pharmacists may be liable under the CSA and its regulations only when they fill a prescription that they know was not issued for a legitimate medical purpose by a prescriber acting in the usual course of the prescriber's professional practice or when pharmacists knowingly abandon all professional norms;
>
> B. The CSA does not require pharmacists to second-guess a registered and licensed doctor's decision that a prescription serves a legitimate medical purpose;
>
> C. The CSA and its regulations do not require pharmacists to refuse to fill entire categories of prescriptions without regard to individual facts and circumstances;
>
> D. The CSA and its regulations do not require pharmacists to document in writing why filling a prescription was appropriate;
>
> E. Pharmacies do not have an affirmative obligation under the CSA and its regulations to analyze and share aggregate prescription data across its stores and with line pharmacists;
>
> F. Pharmacies do not have an affirmative obligation under the CSA and its regulations to impose corporation-wide refusals-to-fill for particular doctors;
>
> G. The CSA and its regulations do not require distributors not to ship suspicious orders after reporting them;

No. 21-40157

H. The CSA and its regulations did not impose monetary penalties for failure to report suspicious orders to DEA during the time Walmart self-distributed; and

I. Defendants must follow their own regulations and may not base any enforceable legal positions on the alleged violation of agency guidance rather than obligations found in a statute or duly promulgated rule or regulation.

Walmart alleges that the government takes the contrary view on all these proposed declarations, but it does not point to any regulations or guidance documents setting forth the government's position. Indeed, Walmart avers that many of the positions that it challenges "contradict DEA's own previously expressed views."

Just a few weeks after the filing of this action, before the court could rule on Walmart's request, the government brought a civil enforcement action against Walmart in the District of Delaware.[1] DOJ did in fact take versions of the positions that Walmart challenges in this action, but Walmart stresses that "the issues in the two suits do not completely overlap."[2]

Meanwhile, the government moved to dismiss the present case for

---

[1] *United States v. Walmart Inc.*, No. 20-cv-1744 (D. Del. Dec. 22, 2020).

[2] There is a second pending action that has some bearing on this one. A multidistrict litigation case has been ongoing in the Northern District of Ohio since 2017. *See In re Nat'l Prescription, Opiate Litig.*, No. 17-md-2804 (N.D. Ohio). Plaintiffs, mostly government agencies, accuse numerous defendants, including Walmart, of misconduct in dispensing opioids. The Plaintiffs' Executive Committee moved to have the present case transferred to that case if it is not dismissed. Because it dismissed the present case, the district court did not rule on the motion to transfer, and that motion is not before this court. We take judicial notice of the fact that on November 23, 2021, the jury returned a large verdict against Walmart and others. *See CVS, Walmart and Walgreens Fueled Opioid Crisis, US jury finds,* The Guardian (Nov, 23, 2021 3:19 PM, https://www.theguardian.com/us-news/2021/nov/23/ohio-cvs-walmart-and-walgreens-opioid-crisis.

No. 21-40157

want of subject-matter jurisdiction.  The government maintained, *inter alia*, that Walmart's suit was barred by sovereign immunity and that it had failed to identify a ripe case or controversy.  After further briefing and oral argument, the court dismissed the suit as barred by sovereign immunity.  The court observed that to overcome sovereign immunity in this context, a plaintiff must have been aggrieved by agency actions.  Walmart pointed only to positions taken by the government during settlement negotiations, which were not "agency action" as that term is used in the APA, and thus its suit was barred.  Walmart appeals.

## II.

We review a dismissal for want of subject-matter jurisdiction *de novo*. *Hinojosa v. Horn*, 896 F.3d 305, 309 (5th Cir. 2018).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  Though the district court relied exclusively on sovereign immunity, this court may affirm dismissal for any reason supported by the record.  *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

## III.
### A.

To bring a claim against a sovereign, a party must first show that that sovereign has waived its immunity from suit.  The waiver at issue is contained in Section 702 of the APA.  It reads in relevant part,

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an

official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. Most circuits that have considered the issue read the second sentence independently of the first, meaning that sovereign immunity is waived in all suits seeking equitable, nonmonetary relief against an agency.[3] But in *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014), we construed the waiver in Section 702's second sentence as cabined by its first sentence.[4] Thus, in this circuit, a plaintiff suing a federal agency must "identify some 'agency action' affecting him in a specific way" and must show that he has suffered legal wrong because of it. *Id.* at 489.

Walmart points to two types of agency action: rules and sanctions. The actions it challenges do not fit neatly into either definition. We first address Walmart's alleged rules, then turn to its alleged sanctions. We conclude that the challenged agency conduct does not satisfy either definition, and so the suit is barred by sovereign immunity. Because Walmart has identified no agency action, we do not reach the question whether it has suffered legal wrong because of those actions.

## B.

Agencies make rules when they announce principles of general applicability and future effect.[5] *United States v. Fla. E. Coast Ry.*, 410 U.S. 224,

---

[3] *See, e.g., Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989); *Black Hills Inst. of Geological Rsch. v. S.D. Sch. of Mines & Tech.*, 12 F.3d 737, 740 (8th Cir. 1994).

[4] This circuit is not alone on its side of the split. *See City of New York v. United States Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019); *SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127, 141 (2d Cir. 2002).

[5] The APA provides a longer, if sometimes unhelpful, definition of "rule":

244-45 (1973). Rules can be divided into substantive and non-substantive varieties. Substantive rules have the force of law, meaning that they bind the regulated public. *See Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 906 (2016). The APA requires that they be preceded by notice and comment. *Id.*; 5 U.S.C. § 553. Non-substantive rules are those exempted from the notice-and-comment requirement because they lack the force of law. They include rules governing internal agency organization or procedures; non-binding agency policy statements; and guidance documents interpreting existing rules. *See* 5 U.S.C. § 553(b)(3)(A).

Walmart cites several "rules," but most of them derive not from official publications but from positions allegedly taken by the government in settlement negotiations with Walmart. Though there is room for disagreement about precisely what satisfies the definition of "rule," it surely does not include negotiating positions.

As Walmart does not contest, negotiating positions are not binding on the regulated public and need not be preceded by notice-and-comment rulemaking, and so they cannot be substantive rules. That conclusion comports with *Shell Offshore Inc. v. Babbit*, 238 F.3d 622 (5th Cir. 2001), and *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227 (5th Cir. 2019). In both cases, the

---

> [T]he whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing . . . .

5 U.S.C. § 551(4).

Department of the Interior effected a policy change that, though never announced as a rule, "controlled" the outcome of adjudications conducted by the agency. *Shell Offshore*, 238 F.3d at 628; *accord W&T Offshore*, 946 F.3d at 238. We concluded that those policy changes were effectively rules, but that conclusion stemmed from the specific context in which an internal agency position dictated the result in a category of adjudications conducted by that same agency. *See Shell Offshore*, 238 F.3d at 628; *W&T Offshore*, 946 F.3d at 238–39. In this case, however, the negotiating positions taken by DOJ are mere legal theories that would succeed or fail in court based on their own merits. We thus agree with the parties that those positions are not substantive rules.

Nor can negotiating positions be thought of as non-substantive rules. Positions about the obligations of pharmacists are not rules of agency organization, procedure, or practice. 5 U.S.C. § 553(A). And because the positions Walmart challenges were expressed behind closed doors, they are not general policy statements or interpretive rules, both of which announce agency views to the public.[6] Indeed, if Walmart is correct that negotiating positions are rules—despite their being not just devoid of legal force but also unwritten and nonpublic—it is unclear when a statement of legal opinion by a government agent would ever *not* be a rule. We reject that expansive reading of the definition of "rule."

Walmart also points to a few more definite agency statements that it claims are "rules," but those statements have shortcomings of their own. Specifically, Walmart points to a 2007 DEA guidance letter recommending that opioid distributors report suspicious orders, a statement in the DEA

---

[6] *See Brown Express, Inc. v. United States*, 607 F.2d 695, 700–01 (5th Cir. 1979); *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 619–20 (5th Cir. 1994).

No. 21-40157

Pharmacist's Manual that pharmacists need not fill "doubtful, questionable, or suspicious" prescriptions, and a criminal complaint filed by DOJ arguing that the simultaneous prescription of certain drug combinations is never medically necessary. A suit based on a 2007 rule would be time-barred, 28 U.S.C. § 2401(a), and because the guidance letter addresses only distributors' obligations, it would, in any case, be challenged only by Declarations G and H. Meanwhile, a recommendation that pharmacists not fill suspicious orders is far too vague to be challenged by any of Walmart's proposed declarations. And a criminal complaint does not create rights or obligations, nor does it have "future effect."[7]

Even if there is substance to some of those "rules," that is not enough to save Walmart's claim under *Alabama-Coushatta*. In that case, the plaintiff did point to various permits and leases issued by the federal government. *Alabama-Coushatta*, 757 F.3d at 491. But even a few specific actions were not enough to sustain a challenge "directed at the federal agencies' broad policies and practices." *Id.* Walmart's challenge is similarly broad, and, once we discount the argument that a theory expressed in a settlement negotiation is a "rule," the remaining rules, even if they are treated as such, are not enough to allow Walmart to overcome sovereign immunity. Walmart has identified no "rules" sufficient to meet its burden under *Alabama-Coushatta*.

## C.

The APA's definition of "sanction" reads,

> [T]he whole or a part of an agency—
> (A) prohibition, requirement, limitation, or other condition

---

[7] *See City of Arlington v. FCC*, 668 F.3d 229, 242 (5th Cir. 2012) (quoting *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994)); *cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216 (1988) (Scalia, J., concurring) (stressing the importance of rules' prospective nature).

affecting the freedom of a person;
(B) withholding of relief;
(C) imposition of penalty or fine;
(D) destruction, taking, seizure, or withholding of property;
(E) assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees;
(F) requirement, revocation, or suspension of a license; or
(G) taking other compulsory or restrictive action . . . .

5 U.S.C. § 551(10).

Walmart contends that "[t]hreats designed to compel compliance"[8] qualify as sanctions because they constitute "compulsory or restrictive action." Applying the canon of *ejusdem generis*, we instead read that saving clause as limited to concrete actions and omissions, rather than action that is merely threatened.

*Ejusdem generis* is a standard rule of statutory interpretation. Applying it, we do not read "other compulsory or restrictive action" literally but instead as impliedly limited to actions like the enumerated ones. We agree with the district court that that canon excludes contingent actions like threats that are distinct from the concrete actions listed.

Walmart asks us not to apply *ejusdem generis* but instead to read the saving clause "exhaustively."[9] That alternative is unsatisfying because,

---

[8] Notably, these threats overlap with the negotiating positions that Walmart characterizes as rules. Thus, under Walmart's theory, when a government agent threatens to sue a regulated party under a particular legal interpretation, he promulgates a rule *and* issues a sanction. That non-distinction underscores just how far Walmart stretches the definition of "rule" and "sanction"—it construes both terms so generally that they encompass the same conduct.

[9] The sole binding authority relied on by Walmart for that proposition is *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008). The Court read the phrase "any other law enforcement officer" literally—but it relied on the presence of the word "any," which is absent here. *See id.* at 218–19.

without the limiting context, "compulsory or restrictive action" could include almost anything. For instance, the passage of a statute can compel or restrict, but statutes can hardly be thought of as "sanctions." Moreover, rules, orders, adjudication, licensing, grants of relief, and failure to act can all compel or restrict, meaning that "sanction" would subsume every other type of agency action. *See* 5 U.S.C. § 551(13).

Contrary to Walmart's protestations, our precedents do not favor such a broad reading of the definition's saving clause. In *Doe v. United States*, 853 F.3d 792 (5th Cir. 2017), we did in fact read agency action broadly, doing so to include failure to provide the plaintiff with a means to respond to accusations against him, *id.* at 800. But we reached that result by interpreting an *enumerated* sanction, "withholding of relief," along with two other types of agency action—"failure to act" and failure to grant a remedy. *Id.* at 799–800. Meanwhile, *Alexander v. Trump*, 753 F. App'x 201 (5th Cir. 2018), rested entirely on failure to act—it did not mention sanctions, *id.* at 206.

Our precedents thus offer no basis to depart from *ejusdem generis* in reading the definition of "sanction." We conclude that that definition does not extend to threats, and thus Walmart has challenged no "sanctions" as that term is used in the APA. Because Walmart has not satisfied *Alabama-Coushatta*'s requirement that it identify agency action, its suit is barred by sovereign immunity.

## IV.
### A.

Even if this suit were not barred by sovereign immunity, Walmart would still have to show the existence of a case or controversy that was ripe for adjudication. "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

No. 21-40157

Ripeness is a twofold inquiry that requires courts to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Although the issue of fitness for decision is fact-bound and somewhat abstract, in the context of pre-enforcement agency action there are several established factors, including "whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986).[10] Failure on even one of the three prongs can render a case unfit for judicial review. *See Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 812 (2003). In addition to those enumerated elements, courts assessing declaratory judgments often engage in more open-ended inquiries into the "likelihood" that threatened litigation "will occur." *Orix*, 212 F.3d at 897.

In determining whether Walmart has carried its burden, we are mindful of the pendency of an enforcement action against it in the District of Delaware on theories of liability similar to those Walmart challenges here. The existence of that litigation demonstrates that this action is not fit for judicial decision and also reduces any hardship posed to Walmart by abstention in this court. That litigation also undermines the contention that future enforcement is likely. We therefore conclude that this action presents no ripe case or controversy.

### B.

Walmart fails to show that this case is fit for judicial decision. As

---

[10] Contrary to Walmart's position, those factors govern pre-enforcement agency actions regardless of whether suit is brought under the APA. *See, e.g.*, *Abbott Labs.*, 387 U.S. at 138–39 (applying the factors in a declaratory action).

noted above, Walmart does not identify any agency action; even if it had, it concedes that it has identified no *final* agency action. On the other hand, Walmart is correct that the declarations it requests present pure legal issues in that they are predominantly questions of statutory interpretation.[11] Finally, the question whether the issue would benefit from more concrete facts weighs in the government's favor. For instance, it would be theoretically possible to declare as a matter of law whether pharmacies had *any* obligation under the CSA to analyze data or reject certain doctors, but the question would be easier if the court knew exactly what obligations pharmacies were alleged to have and could therefore assess whether those obligations accorded with the governing regulations.

This case's lack of fitness for adjudication is made especially evident by the ongoing action in Delaware. In that action, the government has taken positions similar to those that Walmart challenges here, but Walmart itself stresses that there are differences. Walmart points to Declaration D, which states that pharmacists are not required to "document in writing why filling a prescription was appropriate." "[F]or reasons unknown to Walmart," the government has advanced no directly contrary position in the Delaware litigation.[12] Even where the government's theories basically match those challenged by Walmart, there are subtle differences—for instance, Declaration A states that pharmacists are liable only when they knowingly fill an illegitimate prescription or knowingly "abandon all professional norms." As it turns out, the government disagrees with only the second half of the

---

[11] The one outlier, Declaration I, is a statement of administrative law.

[12] It is not that the government's complaint does not reach the issue. The government *does* allege a documentation requirement by pharmacists who fill prescriptions, but only where those prescriptions present "red flags." *See* Complaint at 25, *United States v. Walmart Inc.*, No. 20-cv-1744, ECF No. 1.

declaration—it concedes in its complaint that the filling of an ineffective prescription must be knowing to be punishable.[13]

Those discrepancies illustrate the peril of treating Walmart's requested declarations as constituting a ripe case or controversy. Even courts that are relatively relaxed in their ripeness analysis stress the importance of an unequivocally expressed position by the government. *See N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 5 (1st Cir. 2000); *Monson v. DEA*, 589 F.3d 952, 958 (8th Cir. 2009). When this case was brought, the government had no unequivocal position, but now it has one—and that position is, by Walmart's own telling, materially different from the one Walmart challenges.

At its core, ripeness is a matter of timing that serves to prevent courts from entangling themselves in cases prematurely. *See, e.g.*, *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). If it was not clear when the case was brought, it is certain now that the lack of a clear position on the part of the government rendered the case premature at that time. Because it challenges a series of positions that the government does not quite take, Walmart fails to show the "actual controversy" that is needed for a declaratory judgment to be fit for judicial decision. *See Orix*, 212 F.3d at 896.

## C.

Turning to the second half of the ripeness balancing test, the existence of the Delaware litigation eliminates, or at least greatly reduces, the hardship that will be placed on Walmart by withholding consideration of this suit. Walmart alleges that the requirements the government seeks to impose are far more exacting than those called for by many state governments and private-sector actors, with the result that complying with the federal require-

---

[13] *See* Complaint at 26, *United States v. Walmart Inc.*, No. 20-cv-1744, ECF No. 1.

No. 21-40157

ments exposes it to liability under state law. That hardship may well have fit within the pattern recognized by ripeness cases: Walmart could comply with the alleged federal rules only by exposing itself to enforcement action.[14]

Now, however, Walmart has the ability to test the government's regulatory position in court by raising its theories as defenses in the Delaware action. Though the proposed declarations here are somewhat broader than the government's position in the Delaware litigation, that same discrepancy indicates the problem with Walmart's position. Legal theories not accepted or pursued by the government cannot create cognizable hardship for purposes of ripeness. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Walmart may fear that the Delaware litigation will proceed more slowly than this one would or that the court in that jurisdiction may be less sympathetic to its position, but those are not the "adverse effects of a strictly legal kind" that are necessary to show that withholding of consideration by this court imposes hardship on Walmart. *Id.*

In addition to providing Walmart with an avenue to test its theories, the Delaware suit reduces the likelihood of future prosecution. Cases assessing standing in pre-enforcement cases, which tracks closely with ripeness, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014), often ask whether the threat of enforcement is sufficiently "credible," *id.* at 161, or "clear," *N.H. Hemp*, 203 F.3d at 4. The bringing of the Delaware suit proves that,

---

[14] *Compare Abbott Labs.*, 387 U.S. at 152–53 (finding ripeness where compliance and noncompliance are both potentially costly), *with Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967) (not finding ripeness where "no advance action is required" to comply with a regulation). This analysis is limited to Declarations A through F. Declarations G and H concern the obligations of distributors, whereas Walmart has not distributed opioids since 2018. Declaration I is a truism of administrative law. Even before the Delaware litigation, Walmart could have safely ignored whatever position the government took on those issues without exposing itself to new liability.

No. 21-40157

when this case was filed, enforcement was indeed impending.  When considered from the standpoint of the present, however, the suit's existence also suggests that *future* enforcement is unlikely.[15]

The government has made its move; it would be unusual for it to bring a second action against the same defendant on similar theories until after the current case is decided.  There is thus no clear or credible threat of future prosecution, further undermining the position that withholding review creates hardship for Walmart.  Because the case is not fit for judicial review, and withholding consideration imposes no substantial hardship on Walmart, this action presents no ripe case or controversy.

The dismissal for want of jurisdiction is AFFIRMED.

---

[15] *Cf. Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (concluding that the circumstances at the time of decision, not the time of the district court's decision, governed ripeness analysis).

No. 21-40157

Patrick E. Higginbotham, *Circuit Judge*, concurring:

As addressed in Section IV, the pending litigation in this case answers concerns of our jurisdiction; Section III is unnecessary and therefore I respectfully would not offer explanations of why, in Section IV's absence, the case would fail. I concur in Sections I, II, and IV, and in the judgment.

# *United States Court of Appeals*

## FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

February 14, 2022

Mr. David O'Toole
Eastern District of Texas, Sherman
101 E. Pecan Street
Federal Building
Room 216
Sherman, TX 75090-0000

     No. 21-40157   Walmart v. DOJ
               USDC No. 4:20-CV-817

Dear Mr. O'Toole,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Dawn Shulin*
               By: _____
               Dawn M. Shulin, Deputy Clerk
               504-310-7658

cc w/encl:
     Mr. Jeremy Joseph Broggi
     Mrs. Megan Leef Brown
     Ms. Sarah Wendy Carroll
     Mr. Michael A. Carvin
     Mr. Cameron Davis
     Mr. Jeffrey B. Dubner
     Mr. Theodore H. Frank
     Ms. Karen Hewitt
     Mr. Adam Craig Jed
     Mr. Jeffrey Johnson
     Mr. John Mercer Masslon II
     Mr. Benjamin C. Mizer
     Mr. Clark McAdams Neily III
     Ms. Shana-Tara O'Toole
     Mr. Stephen Obermeier
     Mr. Jacob Moshe Roth

Mr. Ilya Shapiro
Ms. Kate Talmor
Mr. Jason Scott Varnado